| | | |
|---|---|---|
| ROBERT D. ROSE, JR., | ) | |
| | ) | Case No. 2:17-cv-204 |
| *Plaintiff,* | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Clifton L. Corker |
| DEAN BORSOS, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

---

**MEMORANDUM OPINION**

---

Before the Court are the following motions:  1) a motion for substitution of parties filed by the United States (Doc. 95); 2) a motion to dismiss filed by the United States, Dean Borsos, Dr. Matthew Caffrey, Christina Craft, Dr. James Crider, Lonnie Hatton, Dr. David Hecht, Dr. John Hendrick, Kim Odom, Dr. Mark Vernon, and Dr. Dale Whitson[1] (together the "Medical Provider Defendants") (Doc. 97); 3) a motion to dismiss filed by Defendants Jerry Shelton, Russell Jamerson, and Ernest King (together the "Officer Defendants") (Doc. 99); 4) a motion to dismiss certain intentional-tort claims filed by the United States (Doc. 101); 5) a motion for supporting evidence or for dismissal of Defendants' motions to dismiss filed by Plaintiff Robert D. Rose, Jr. (Doc. 108); and 6) a motion to amend the scheduling order, filed by the United States and the Medical Provider Defendants (Doc. 134).  For the following reasons, the motion for substitution of parties (Doc. 95) will be **GRANTED**, the motions to dismiss (Docs. 97, 99, 101) will be **GRANTED**, Plaintiff's motion for supporting evidence or for dismissal of

---

[1] The Court has already dismissed Plaintiff's claims against Dr. Thomas Edwards for failure to prosecute.  (*See* Doc. 43.)

Defendants' motions to dismiss (Doc. 108) will be **DENIED AS MOOT**, and the motion to amend the scheduling order (Doc. 134) will be **DENIED AS MOOT**.

## I.     BACKGROUND

The following facts, alleged in Plaintiff's amended complaint, will be accepted as true for the purposes of the pending motions to dismiss.  Plaintiff served as a United States Marine from 1983 to 1994.  (Doc. 22, at 4.)  During service, Plaintiff suffered a number of serious injuries, including a spinal cord injury, which ultimately "result[ed] in long term Intractable Pain Disease."  (*Id.*)  After returning to civilian life, Plaintiff was treated for pain at the Mountain Home Veterans Affairs Medical Center ( "Mountain Home VAMC").  (*Id.* at 1, 4.)  According to Plaintiff, in October 2016, he received a call from Defendant Christina Craft, a nurse practitioner, who informed him that the United States Department of Veterans Affairs (the "VA") had adopted a new "opioid safety initiative" (the "VA Policy").  (*Id.* at 4.)  Craft told Plaintiff that, under the VA Policy, the providers at Mountain Home VAMC would start tapering Plaintiff's pain medication—despite his medical condition and persistent pain.  (*Id.*)  According to Plaintiff, Dr. James Crider, a primary care physician at Mountain Home VAMC whom Plaintiff had yet to meet, was "supposedly" supervising Craft at this time.  (*Id.* at 6.)

Before the forced tapering, Plaintiff was prescribed 180 milligrams of morphine sulfate a day.  (*Id.* at 4.)  Craft first decreased his daily dose to 120 milligrams and then continued tapering his medication further.  (*Id.*)  Since the forced tapering, Plaintiff has experienced symptoms of increased pain, difficulty breathing, high blood pressure, numbness, tingling, and dizziness.  (*Id.* at 5.)  Plaintiff resisted going to the Mountain Home VAMC to treat these symptoms, believing it would be a waste of time.  (*Id.* at 6.)  Defendant Lonnie Hatton, the Mountain Home VAMC Patient Advocate, advised Plaintiff that the VA would not compensate

any visits to a private health care provider.  (*Id.*)   On October 28, 2016, Dr. Crider "falsely enter[ed] into [Plaintiff's] medical records that [he had] violated the pain patient agreement contract; still without having spoken to [him]."  (*Id.*)

On November 29, 2016, after a month of reduced pain medication, Plaintiff's symptoms caused him so much pain that he visited the emergency room at the Mountain Home VAMC. (*Id.*)  From the waiting area, Plaintiff contacted Hatton and asked her to meet him at the emergency room, but she never arrived.  (*Id.* at 7.)  Plaintiff was eventually called back to see a physician, but, when the staff realized that Plaintiff was attempting to make an audio recording of the visit, a police officer was summoned to his exam room.  (*Id.*)  "Sgt. Haney," who is not listed as a defendant, "bullied his way into the room" and told Plaintiff that recording devices were not permitted at VA facilities.  (*Id.*)  Haney told Plaintiff that "if [he] did not stop interfering" with the activities of the staff at the Mountain Home VAMC, "he was going to throw [Plaintiff] in the back of his car, take [him] to Greeneville, and make [him] talk to Judge Corker."[2]  (*Id.* at 7–8.)  According to Plaintiff, "Haney was equipped with his sidearm and in uniform" during this interaction.  (*Id.* at 17.)  After Haney left the room, Plaintiff called his wife on the telephone and decided to leave after discussing the matter with her.  (*Id.* at 8.)

According to Plaintiff, the next thing he remembered was "being strapped extremely tightly to some sort of board . . . ."  (*Id.*)  A nurse explained to Plaintiff that he had fallen and needed x-rays.  (*Id.*)  Plaintiff was given two doses of morphine, which relieved some of his pain.  (*Id.*)  Nevertheless, when he was ultimately discharged, he was still in extreme pain and had "extremely high blood pressure."  (*Id.* at 9.)

---

[2] Magistrate Judge Clifton L. Corker is a United States magistrate judge in Greeneville, Tennessee, and the magistrate judge assigned to this case.

Before his discharge, Plaintiff and his wife spoke to Defendant Dr. Suzanne Allen. (*Id.*) Allen "indicated that because of the VA[']s blanket policy she was forbidden to provide anything more for the pain or to provide anything for me to take home." (*Id.*) Allen informed Plaintiff that "the Cat Scans indicated no new damages but that she could see the old fracture to the T9 . . . ." (*Id.*) Allen gave Plaintiff a discharge paper with the following directions: "a. Continue opiate taper as prescribed[;] b. Moist heat to neck and back[;] c. Use muscle relaxers as prescribed[;] d. Call PCP for pain management referral." (*Id.*)

When Plaintiff arrived home, he got out his recording device to listen to the part of the incident he had recorded, but discovered that "someone had gone into [his] saddlebag on [his] wheelchair and deleted what little of the incident [he] was able to record." (*Id.* at 10.)

After the incident, Plaintiff and his son met with Defendant Dr. John Hendrick and a Mountain Home VAMC psychologist. (*Id.* at 10–11.) During the meeting, Dr. Hendrick falsely accused Plaintiff of suffering from "opioid use disorder" and "opioid dependence disorder," despite his lack of training in substance-abuse disorders. (*Id.*) According to Plaintiff, as retaliation "for what Dr. Hendrick perceived as a threat during this meeting," Dr. Hendrick coerced the psychologist to falsely diagnose Plaintiff with "opioid use disorder" and wrote an "administrative note" asserting that Plaintiff should be treated in a substance-abuse program. (*Id.*) As a result of the administrative note, which Plaintiff alleges Dr. Hendrick shared with non-medical personnel, other health-care providers at Mountain Home VAMC—specifically Craft, Dr. James Crider, Dr. Thomas Edwards, and Dr. Mark Vernon—continued to deny him needed pain medication. (*Id.* at 11–16.) Other providers, including nurse Teresa Odom, also wrote misleading and defamatory notes in his file. (*Id.*) According to Plaintiff, he is unable to purchase private insurance to seek medical care outside of the VA medical system as a result of

the notes in his file.  (*Id.* at 12.)  Additionally, Dean Borsos, the Mountain Home VAMC Director, submitted false information about Plaintiff's medical history in a letter to Senator Bob Corker.  (*Id.* at 15–16.)

On December 21, 2016, Craft offered to restore Plaintiff's pain medication dosage to 120 milligrams per day, "but only if he would stop fighting the VA policies."  (*Id.* at 4.)  According to Plaintiff, after Craft admitted that this increase would only be for a twenty-week period, Plaintiff refused.  (*Id.*)  At the time of his amended complaint, Plaintiff asserted he had not taken pain medication since December 29, 2016.  (*Id.* at 5.)

Dr. Matthew Caffrey saw Plaintiff in January 2016 for pain management.  (*Id.* at 15.)  He told Plaintiff about his family member who committed suicide after suffering from pain and dementia and advised Plaintiff that "God would forgive [him] for committing suicide because of uncontrolled pain."  (*Id.*)

On May 20, 2017, Plaintiff was seen by Dr. Vernon, his primary care physician.  (*Id.* at 13.)  According to Plaintiff, despite his high blood pressure and diabetes, Dr. Vernon advised him to continue to smoke cigarettes and drink Mountain Dew.  (*Id.*)  Dr. Vernon eventually apologized to him for the VA Policy and admitted that, based on his "latest nerve conduction tests," Plaintiff's  pain medication should have never been reduced.  (*Id.*)

On May 23, 2017, Plaintiff saw Dr. Edwards.  (*Id.*)  Plaintiff alleges that, though Dr. Edwards had not reviewed his medical records, he refused to prescribe opioid medication to Plaintiff.  (*Id.* at 13–14.)  Plaintiff "stated [to Dr. Edwards] in anger 'Then just prescribe me a 9mm and one round to end my suffering' . . . ."  (*Id.* at 14.)  Plaintiff also told Dr. Edwards that Plaintiff would "destroy him . . . legally."  (*Id.*)  Plaintiff alleges that, based on these statements,

Dr. Edwards and his nurse Teresa Odom "had [his] record flagged as a danger to [himself], others or medical staff." (*Id.*)

Several days later, as a result of this flag, Plaintiff "was informed by phone that [he] had to go before the Disruptive Behavior Clinic on June 6, 2017." (*Id.*) Plaintiff reported to the Clinic on June 6, as requested. (*Id.* at 15.) Jerry Shelton, the Chief of the Mountain Home VAMC Police, met with Plaintiff at the clinic. (*Id.*) Shelton interrogated him with his firearm and handcuffs plainly visible "[i]n an obvious attempt at intimidation." (*Id.*) After Plaintiff explained the context of his comments to Dr. Edwards, Shelton implored him to "be more cautious in future communications with staff and providers . . . as [his] military demeanor could be intimidating" (*Id.*) Shelton advised Plaintiff that "[the Disruptive Behavior Clinic Board] did not consider [him] to be a threat" and that the flag would be removed from his records." (*Id.*) According to Plaintiff, however, the flag remains in his records, but an "addendum" provides that Plaintiff "denies intent to physically harm others or self . . . ." (*Id.*)

On July 3, 2017, Plaintiff "attempt[ed] to address these grievous policies with Congressman Roe"[3] at the Mountain Home VAMC, but "was . . . kidnapped [by being] forced to enter [a] police station against [his] will . . . by threat of physical violence by three armed officers."[4] (*Id.* at 4.) According to Plaintiff, he "was . . . illegally detained in excess of thirty minutes." (*Id.*) As Plaintiff was departing the police station, Hatton prevented him from speaking to other veterans. (*Id.*) Plaintiff alleges this encounter with the Mountain Home

---

[3] Congressman Phil Roe is a United States Representative for the 1st congressional district of Tennessee. Congressman Roe serves as the Chairman of the United States House of Representatives Committee on Veteran's Affairs. Plaintiff's claims against Congressman Roe were dismissed on July 23, 2018. (*See* Doc. 133.)

[4] In another filing, Plaintiff implies that this incident occurred at the Mountain Home VAMC before Congressman Roe was scheduled to speak at a public ceremony. (Doc. 68, at 7.)

VAMC police was "orchestrated by Congressman Phil Roe (R-TN) and/or members of his staff." (*Id.* at 1, 3.)

Plaintiff filed suit on November 6, 2017, and amended his complaint as a matter of course on February 21, 2018. (Docs. 1, 22.) Plaintiff asserts claims for: (1) violation of a provision of the Declaration of Independence; (2) violation of the First Amendment; (3) violation of due process under the Fifth Amendment; (4) violation of the Ninth Amendment; (5) violation of due process under the Fourteenth Amendment; (6) violation of 42 U.S.C. § 1395; (7) "Violation of Proxmire Act: S. 1851 (100th): Genocide Convention Implementation Act of 1987" (the "Proxmire Act"); (8) "Violation of International Treaty as set forth in International Covenant on Economic, Social and Cultural Rights"; (9) violation of the Americans with Disabilities Act; (10) "Violation of Chapter LXXVII An act for the relief of sick and disabled seaman by the 5th Congress"; (11) "Violation of Hippocratic Oath"; (12) medical malpractice; (13) "Conspiracy to kidnap on Federal property"; (14) libel; (15) slander; (16) violation of the Eight Amendment; (17) negligence; (18) assault; (19) battery; and (20) false imprisonment.[5] (Doc. 22, at 2–4, 16–22.)

On July 9, 2018, the United States filed a motion for substitution of parties. (Doc. 95.) On July 10, 2018, the United States and the Medical Provider Defendants filed a motion to dismiss. (Doc. 97.) Also on July 10, 2018, the Officer Defendants filed a motion to dismiss (Doc. 99) and the United States filed a motion to dismiss certain intentional-tort claims (Doc. 101). On July 13, 2018, Plaintiff filed a motion for supporting evidence or for dismissal of

---

[5] Plaintiff also asserted claims against Congressman Roe for "[a]buse of Congressional power" and "[p]rofiteering off policies designed to force veterans to civilian pain clinics & doctors in direct conflict of interests as Chairman for House Veterans Administration Committee." (*See* Doc. 22, at 4.) Plaintiff's claims against Congressman Roe have been dismissed. (*See* Doc. 133.)

Defendants' motions to dismiss. (Doc. 108.) Finally, on July 26, 2018, the United States and the Medical Provider Defendants filed a motion to amend the scheduling order. (Doc. 134.) These motions are now ripe for the Court's review.

The Court notes that Plaintiff is proceeding in this action *pro se*. The Court is mindful that *pro se* complaints are liberally construed and are held to less stringent standards than the formal pleadings prepared by attorneys. *Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 358 (6th Cir. 2012). The Court is "not, [however,] require[d] to either guess the nature of or create a litigant's claim." *See, e.g.*, *Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006). Likewise, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law," and ultimately, those who proceed without counsel must still comply with the procedural rules that govern civil cases, including the pleading standards set forth in Rule 8(a) of the Federal Rules of Civil Procedure. *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006); *Kafele v. Lerner, Sampson, Rothfuss, L.P.A.*, 161 F. App'x 487, 491 (6th Cir. 2005) ("[P]ro se litigants are not relieved of the duty to develop claims with an appropriate degree of specificity."); *Whitson v. Union Boiler Co.*, 47 F. App'x 757, 759 (6th Cir. 2002). Thus, although the standard of review for *pro se* litigants is liberal, it requires more than the bare assertion of legal conclusions. *Leeds*, 174 F. App'x at 255.

## II.     MOTION FOR SUBSTITUTION OF PARTIES

The United States seeks to substitute itself for the Medical Provider Defendants and the Officer Defendants with respect to Plaintiff's tort claims and submits certifications that the Medical Provider Defendants and Officer Defendants were acting within the scope of their employment at all times relevant to Plaintiff's claims. (Docs. 95, 95-1.)

The Federal Tort Claims Act ("FTCA") provides the exclusive remedy for plaintiffs who allege claims for injuries "resulting from the negligent or wrongful act or omission of any employee of the [United States] while acting within the scope of his [or her] office or employment . . . ." 28 U.S.C. § 2679(b)(1). The FTCA "waives sovereign immunity to the extent that state-law would impose liability on a 'private individual in similar circumstances.'" *Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994) (quoting 28 U.S.C. § 2674). Accordingly, the FTCA provides jurisdiction for certain state-law tort claims against the United States. *See id.* Claims alleging constitutional violations, however, should not be brought under the FTCA. *Browning v. Pennerton*, 633 F. Supp. 2d 415, 427 (E.D. Ky. 2009); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994).

Where a plaintiff sues the federal employee, "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," the Court should substitute the United States as a defendant. 28 U.S.C. § 2679(d)(1); *see also Mars v. Hanberry*, 752 F.2d 254, 255 (6th Cir. 1985) ("The United States is the only proper party in an action pursuant to the [FTCA].") Once an FTCA claim against the United States fails, "the [FTCA] does not provide for an independent cause of action against federal employees . . . ." *Mars*, 752 F.2d at 255.

Here, Plaintiff asserts claims for injuries resulting from negligent or wrongful acts or omissions of the Medical Provider Defendants and the Officer Defendants, all federal employees. (*See generally* Doc. 22.) There is no argument that the Medical Provider Defendants or the Officer Defendants were not acting within the scope of their employment at all relevant times. (*Id.*) Accordingly, the motion for substitution (Doc. 95) is **GRANTED**. The United States of America is hereby **SUBSTITUTED** in place of the Medical Provider Defendants and the Officer

Defendants for all state-law tort claims alleged against them, including Plaintiff's claims for medical malpractice, libel, slander, negligence, assault, battery, and false imprisonment. To the extent Plaintiff's suit alleges claims other than those governed by the FTCA, the Medical Provider Defendants and Officer Defendants shall remain named in their individual capacities. All further proceedings, pleadings, and papers in this action shall include the United States as a defendant.

## III.    PLAINTIFF'S MOTION FOR SUPPORTING EVIDENCE OR DISMISSAL

In his motion, Plaintiff requests that the Court direct the United States and the Medical Provider Defendants to provide evidence supporting an assertion made in their motion to dismiss. (Doc. 108.) In the alternative, Plaintiff seeks dismissal of the motion to dismiss. (*Id.*) Specifically, in a footnote, the United States and the Medical Provider Defendants contest certain factual allegations made in Plaintiff's amended complaint. (*See* Doc. 96, at 2 n.2.) Because the Court will assume the facts alleged in Plaintiff's amended complaint are true for the purposes of the pending motions to dismiss, Plaintiff's motion is **DENIED AS MOOT**.[6]

## IV.    CLAIMS AGAINST THE MEDICAL PROVIDER DEFENDANTS

The Medical Provider Defendants argue that Plaintiff's claims against them should be dismissed for failure to state a claim upon which relief may be granted.[7]

---

[6] Plaintiff also requests a "short extension of time" to respond to Defendants' motions. (Doc. 108, at 5.) Taking into account the three additional days for service provided by Federal Rule of Civil Procedure 6(d), Plaintiff's deadline to respond to the motions to dismiss was August 3, 2018. *See* E.D. of Tenn. Local Rule 7.1(a). Plaintiff has yet to respond. Accordingly, Plaintiff's request for an extension of time is **DENIED AS MOOT**.

[7] The Court will analyze the state-law claims against the United States asserted under the FTCA in a separate section. *See infra* Part VI.

### a. *Standard of Law*

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### b. *Violation of the Declaration of Independence*

Plaintiff alleges a claim against the Medical Provider Defendants for violation of a provision in the Declaration of Independence that states that "all men . . . are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness." (Doc. 22, at 2.) There is no private right of action under the Declaration of Independence. *Bird v. Guarino*, No. 2:17-cv-0554, 2017 WL 4844510, at *2 (E.D. Cal. Oct. 26, 2017). Accordingly, Plaintiff's claim for violation of the Declaration of Independence will be **DISMISSED WITH PREJUDICE**.

### c. *First Amendment*

As it relates to the Medical Provider Defendants, Plaintiff alleges that Dr. Caffrey violated the First Amendment's Establishment Clause when he advised Plaintiff that "God would forgive [him] for suicide." (Doc. 22, at 2, 15.)

The First Amendment provides that "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I. The Establishment Clause was intended to protect against "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971) (internal quotation marks omitted). The Supreme Court of the United States has noted that "total separation [between church and state] is not possible in an absolute sense" because "[s]ome relationship between government and religious organizations is inevitable." *Id.* at 614. Under the test established in

*Lemon v. Kurtzman*, a plaintiff fails to state a claim for violation of the Establishment Clause if the government action: (1) has a secular purpose; (2) does not have the principal or primary effect of advancing or inhibiting religion; and (3) does not foster excessive entanglement with religion. *Id.* at 612–13. When applying the *Lemon* test, "[b]oth the content and the context of the religious [statement] must be analyzed, and, the constitutionality of a [statement's] effect must be judged according to the standard of a reasonable observer." *Kunselman v. W. Reserve Local Sch. Dist.*, 70 F.3d 931, 932 (6th Cir. 1995) (internal citations and emphasis omitted) (determining that a school's "Blue Devil" mascot does not violate the Establishment Clause).

Here, Dr. Caffrey's statement had the secular purpose of providing medical treatment to Plaintiff—albeit poor medical treatment, assuming the truth of Plaintiff's allegations. Considering the content and context of Dr. Caffrey's alleged statement, no reasonable observer would believe that the principal or primary effect of Dr. Caffrey's words was to advance or inhibit religion. Moreover, Dr. Caffrey made the alleged statement in a private setting to one individual. *Cf. Cty. of Allegheny v. ACLU,* 492 U.S. 573, 626–27 (1989) (O'Connor, J., concurring) ("The display of religious symbols in public areas of core government buildings runs a special risk of 'mak[ing] religion relevant, in reality or public perception, to status in the political community.'"). Finally, Dr. Caffrey's alleged statement does not connote active involvement by the federal government in religious activity. Accordingly, Plaintiff's allegations against Dr. Caffrey fail to state a claim under the Establishment Clause, and his First Amendment claims against the Medical Provider Defendants will be **DISMISSED WITH PREJUDICE**.

### d. *Fifth Amendment*

Plaintiff alleges substantive-due-process violations by the Medical Provider Defendants. (Doc. 22, at 18–19.)  Specifically, Plaintiff asserts that the Medical Provider Defendants' actions in refusing to prescribe him opioid medication in accordance with the VA Policy violated his "right to access health care services at one's own expense from willing medical providers."  (*Id.*)

The Fifth Amendment of the United States Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."  Where a plaintiff asserts a due-process claim against a federal actor, as here, the Court should apply the Fifth Amendment, rather than the Fourteenth Amendment.  *See Scott v. Clay Cty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) ("The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government.")  Nevertheless, courts generally approach due-process claims under the Fifth Amendment in a similar manner to claims under the Fourteenth Amendment.  *See, e.g.*, *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977) (applying Supreme Court precedent determining state prisoners' interests under the Due Process Clause of the Fourteenth Amendment to federal prisoners' interest under the Fifth Amendment).

The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests."[8]  *Washington v. Glucksberg*, 521 U.S. 702,

---

[8] Because Plaintiff does not allege that the Medical Provider Defendants failed to provide him notice or adequate procedures by which he could contest his forced tapering, the Court will not infer a procedural-due-process claim.  *See Parrino v. Price*, 869 F.3d 692, 397 (6th Cir. 2017). Moreover, "[t]o sustain a procedural due process claim, a plaintiff must first demonstrate the existence of a protected liberty or property interest."  *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996).  For the reasons discussed herein, Plaintiff does not have a constitutionally protected liberty interest in access to certain medical services by the VA, and Plaintiff does not identify a law that bestows a property interest in obtaining pain medication upon him. Accordingly, any procedural-due-process claims would fail.

720 (1997).  The Sixth Circuit has recognized two types of substantive-due-process violations: "(1) official acts that are unreasonable, arbitrary and cause a deprivation of a substantive right specified in the Constitution, [and] (2) official acts that may not take place no matter what procedural protections accompany them."  *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989) (internal quotation marks omitted).  With regard to the first type, courts have recognized a limited number of substantive rights protected by the Constitution, including "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, . . . to abortion, [and possibly] . . . to refuse unwanted lifesaving medical treatment."  *Glucksberg*, 521 U.S. at 720 (internal citations omitted).  Courts should be extremely reluctant to expand on the list of recognized fundamental rights.  *Id.*  The Supreme Court has warned that an asserted fundamental right will only be protected if it is "careful[ly] descri[bed]" and "deeply rooted in this Nation's history and tradition."  *Id.* at 721.  For example, in *Glucksberg*, the Supreme Court rejected the argument that recognition of a right of personal autonomy in cases like *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), "warrant[s] the sweeping conclusion that any and all important, intimate, and personal decisions are so protected" and concluded that the asserted right to assistance in committing suicide is not a fundamental right.  *Id.* at 727, 728.

When a government action burdens the exercise of a fundamental right, it is subject to strict scrutiny and "will be upheld only when [it is] narrowly tailored to a compelling governmental interest."  *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000).  "Government actions that do not affect fundamental rights . . . will be upheld if they are rationally related to a legitimate state interest."  *Id.* at 575.

Here, Plaintiff characterizes the fundamental right allegedly burdened as "the right to access health care services at one's own expense from willing medical providers." (Doc. 22, at 19.) When carefully formulating the interest at stake, as required by *Glucksberg*, the VA Policy does not actually interfere with Plaintiff's general access to health-care services. For example, Plaintiff is still free to obtain pain medication from private providers should they be willing to prescribe it to him. In reality, Plaintiff asserts a constitutional right to be provided certain health-care services by the VA—a federal agency—and its employees. Courts have long held that governments are under no constitutional duty to provide medical treatment and services. *See, e.g.*, *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996) (noting that "[t]he government . . . has no affirmative constitutional duty to provide emergency medical services to its citizens" and, "[f]or similar reasons, neither do individuals have a right to be taken to the hospital of their choice"); *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032–34 (11th Cir. 1987) ("[W]e can discern no general right, based upon either the Constitution or federal statutes, to the provision of medical treatment and services by a state or municipality."); *see also Maher v. Roe*, 432 U.S. 464, 469 ("The Constitution imposes no obligation on the States . . . to pay any of the medical expenses of indigents."). Given the foregoing, the Court declines to recognize the right Plaintiff asserts as fundamental.

Because Plaintiff fails to allege a fundamental right burdened by the Medical Provider Defendants, their actions need only be rationally related to a legitimate governmental interest to be upheld under the Due Process Clause. "This standard is highly deferential; courts hold [government actions] unconstitutional under this standard of review only in rare or exceptional circumstances." *Parrino v. Price*, 869 F.3d 392, 398 (6th Cir. 2017) (internal quotation marks omitted). Here, the VA and its employees have an interest in protecting veterans from the

growing epidemic of opioid misuse and opioid-use disorder. The VA Policy, which provides

guidance to its physicians considering treating chronic pain with long-term opioid therapy, is

rationally related to that interest. Accordingly, the Medical Provider Defendants' adherence to

the VA Policy passes rational-basis review.

To the extent Plaintiff asserts a violation of the second type of substantive-due-process

protection, Plaintiff must allege a constitutional violation that "shocks the conscience." *Cty. of

Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (noting "the forced pumping of a suspect's

stomach . . . as conduct that shocks the conscience" (internal citation and quotation marks

omitted)). "[C]onduct intended to injure in some way unjustifiable by any government interest is

the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849. In this

case, Plaintiff alleges that the Medical Provider Defendants violated his constitutional rights by

following the VA Policy. The Court has already determined that the VA and the Medical

Provider Defendants have a legitimate interest in administering the VA Policy. Plaintiff,

therefore, fails to allege conduct by the Medical Provider Defendants that was intended to injure

him in an unjustifiable way or conduct that "shocks the conscience." Accordingly, Plaintiff's

due-process claim against the Medical Provider Defendants under the Fifth Amendment fails and

will be **DISMISSED WITH PREJUDICE**.[9]

e. *Eighth Amendment*

Plaintiff asserts a claim under the Eighth Amendment for "inflict[ion of] cruel and

unusual punishment on individuals who have broken no laws or charged with terrorist like

_____

[9] Plaintiff also briefly asserts that the Medical Provider Defendants' conduct in "[f]alsely entering into medical record 'opioid dependent'" and "[m]andatory drug screens without just or probable cause" violates the Fifth Amendment's Due Process Clause. (Doc. 22, at 2.) Plaintiff fails to assert a fundamental right violated by these actions, and the Court is unaware of one. Moreover, these allegations do not rise to the level of conscience-shocking conduct.

activities." (Doc. 22, at 4.) "It is well settled that the Eighth Amendment prohibition against cruel and unusual punishment is applicable only to those convicted of crimes." *Galas v. McKee*, 801 F.2d 200, 205 (6th Cir. 1986) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Ingraham v. Wright*, 430 U.S. 651, 664 (1977); *Roberts v. City of Troy*, 773 F.2d 720, 722–23 (6th Cir. 1985)); *see also Ledwith v. City of N.Y.*, No. 83 CIV. 3421 (PKL), 1986 WL 9800, at *3 (S.D.N.Y. Sept. 4, 1986) ("The Eighth Amendment's protection against 'cruel and unusual punishment' applies *only* to prisoners incarcerated as a result of a criminal conviction." (emphasis in original)). Because Plaintiff is not a prisoner incarcerated as a result of a criminal conviction, his Eight Amendment claims will be **DISMISSED WITH PREJUDICE**.

### f. *Ninth Amendment*

Plaintiff alleges the Medical Provider Defendants violated the Ninth Amendment "by placing limits on medically necessary, appropriate, properly administered & monitored medications thereby denying the pursuit of a quality life in the pursuit of life, liberty & happiness." (Doc. 22, at 2.) The Ninth Amendment to the United States Constitution states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." "[T]he Ninth Amendment does not set forth any particular guarantees, but is merely a rule of construction." *Marshall v. Reno*, 915 F. Supp. 426, 428 (D.D.C. 1996). "The Ninth Amendment has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." *Mont. Caregivers Ass'n LLC v. United States*, 526 F. App'x 756, 758 (9th Cir. 2013) (internal quotation marks omitted). Accordingly, Plaintiff's Ninth Amendment claim will be **DISMISSED WITH PREJUDICE**.

### g. *Fourteenth Amendment*

Plaintiff also asserts a due-process claim under the Fourteenth Amendment. (Doc. 22, at 2, 18–19.) The Fourteenth Amendment applies to the states, not to the federal government. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). Defendants are all employees of the federal government. Consequently, the Fourteenth Amendment does not apply, and Plaintiff's claims under the Fourteenth Amendment will be **DISMISSED WITH PREJUDICE**.

### h. **Bivens** *Claim*

Plaintiff asserts that the Medical Provider Defendants are "liable for Constitutional violations, under the Bivens doctrine." (Doc. 22, at 16.) An action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), "allows civil rights claims against federal officials that are analogous to those brought against state officials under 42 U.S.C. § 1983." *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010). "To succeed on a *Bivens* action, a plaintiff must first establish a constitutional violation." *Id.* As established above, Plaintiff fails to state a constitutional claim against the Medical Provider Defendants upon which relief may be granted. Moreover, the Supreme Court has noted that, where a plaintiff seeks to alter a policy—rather than deter an individual official's unconstitutional conduct—a *Bivens* claim would not be proper. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). Plaintiff's claim against the Medical Provider Defendants stems mainly from their implementation of the VA Policy. For these reasons, any *Bivens* claims against the Medical Provider Defendants fail as a matter of law.

### i. *Claim Under 42 U.S.C. § 1395*

Plaintiff asserts a claim for violation of 42 U.S.C. § 1395. (Doc. 22, at 2.) Commonly known as the Medicare Act, this subchapter of the United States Code was established to provide health insurance to the aged and disabled. 42 U.S.C. §§ 1395, *et seq.* The provision cited by Plaintiff provides that "[n]othing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided . . . ." 42 U.S.C. § 1395. Plaintiff does not allege that he is a Medicare recipient or that any of the alleged treatment by the Medical Provider Defendants relates to the Medicare Act. Accordingly, Plaintiff does not have a cause of action under the Medicare Act, and his claim under 42 U.S.C. § 1395 will be **DISMISSED WITH PREJUDICE**.

### j. *The Proxmire Act*

Plaintiff alleges violation of the Proxmire Act by "[p]romotion of genocide against veterans [and] against 100 million Americans." (Doc. 22, at 2.) The Proxmire Act, codified at 18 U.S.C. § 1091, provides criminal prohibitions on genocide. The statute defines "genocide" as a number of acts done "with the specific intent to destroy, in whole or in substantial part, a national, ethnic, racial, or religious group . . . ." 18 U.S.C. § 1091(a). Plaintiff does not allege the specific intent by any Defendant to destroy a national, ethnic, racial or religious group. Moreover, Plaintiff fails to argue that a private cause of action exists under the Proxmire Act. Accordingly, Plaintiff's claims under the Proxmire Act will be **DISMISSED WITH PREJUDICE**.

### k. *International Treaty*

Plaintiff alleges a claim for "Violation of International Treaty as set forth in International Covenant on Economic, Social and Cultural Rights" (the "ICESCR"). (Doc. 22, at 3.)

Where an international treaty is not self-executing, it does not create a private cause of action in federal courts. *See Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 257 n.35 (2d Cir. 2003) (noting that, because the International Covenant on Civil and Political Rights was ratified with a declaration that it is not self-executing, it does not create a private cause of action in federal courts); *Hain v. Gibson*, 287 F.3d 1224, 1243 (6th Cir. 2002) ("[A] non-self-executing [international] agreement will not be given effect as law [in federal courts] in the absence of necessary authority." (internal quotation marks omitted)). "International treaties are not presumed to create rights that are privately enforceable." *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992) (citing *Head Money Cases*, 112 U.S. 580, 598–99 (1884); *Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 314 (1829)). A court should only find that a treaty is self-executing where "the document, as a whole, evidences an intent to provide a private right of action." *Id.*

The ICESCR does not explicitly provide for a cause of action, and a reasonable reading of the ICESCR as a whole does not evidence an intent to provide a private cause of action.[10] Courts that have considered the ICESCR have come to the same conclusion. *See, e.g.*, *Hyder v. Obama*, No. 5:11cv26, 2011 WL 1113496, at *1 (E.D. Tex. Mar. 11, 2011) (finding that the plaintiff lacked standing to enforce provisions of the ICESCR); *Swain v. Fullenkamp*, No. 3:09CV2659, 2010 WL 1995609, at *4 (N.D. Ohio May 19, 2010) (same); *Ctr. for Indep. of Judges and Lawyers of U.S., Inc. v. Mabey*, 19 B.R. 635, 646–48 (D. Utah 1982) ("[N]othing

---

[10] The text of the ICESCR is attached to Defendants' response to Plaintiff's request for preliminary injunction. (Doc. 91-1.)

appears in the [ICESCR] that vests in private individuals the right to go into domestic tribunals to collect awards of damages for wrongs allegedly done to others . . . [or] authorizes a federal court to assume jurisdiction . . . .").  Accordingly, because no cause of action exists under the ICESCR, Plaintiff's claim for violation of the ICESCR will be **DISMISSED WITH PREJUDICE**.

### l. *Americans with Disabilities Act*

Plaintiff asserts a claim against the Medical Provider Defendants under the Americans with Disabilities Act ("ADA").  (Doc. 22, at 3.)  Specifically, Plaintiff alleges that the Medical Provider Defendants' "denial of life saving medication" prevents his ability to "accomplish basic human tasks" and "attain a decent quality of life," thereby violating "[e]qual opportunity for individuals with disabilities."  (*Id.*)

The ADA, codified at 42 U.S.C. §§ 12131 *et seq.*, prohibits discrimination against individuals with disabilities.  "The ADA is divided into three sections:  Title I which regulates discrimination in the workplace; Title II which prohibits discrimination by public entities; and Title III which prohibits discrimination by private entities in places of public accommodation." *Collazo v. Corr. Corp. of Am.*, No. 4:11CV1424, 2011 WL 6012425, at *2 (N.D. Ohio Nov. 30, 2011).  Plaintiff does not allege employment discrimination, so Title I is inapplicable here. Moreover, Title I explicitly excludes the federal government.  *See* 42 U.S.C. § 12111(5)(B) ("The term 'employer' does not include the United States . . . .").

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Under Title II, a public entity includes "any State or local

government, [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131(1)(A)–(B). Given this definition, "Title II of the ADA is not applicable to the federal government." *Cellular Phone Taskforce v. F.C.C.*, 217 F.3d 72, 73 (2d Cir. 2000) (citing 42 U.S.C. § 12131).

Finally, Title III prohibits discrimination "by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). This provision of the ADA applies to "public accommodations . . . operated by *private entities*, not public entities." *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1036 (6th Cir. 1995) (emphasis in original). Consequently, because Plaintiff alleges discrimination by federal employees, Title III does not apply. Therefore, Plaintiff's claim under the ADA fails and will be **DISMISSED WITH PREJUDICE**.

### m. *Act for the Relief of Sick and Disabled Seamen*

Plaintiff alleges a claim for "[v]iolation of Chapter LXXVII An act for the relief of sick and disabled seam[e]n by the 5th Congress and signed by President John Adams on July 16, 1798" (the "Marine Hospital Act"). (Doc. 22, at 3.) The Marine Hospital Act required shipmasters to retain twenty cents per month out of the wages of seamen employed on their vessels. Ch. 77, §§ 1–5, 1 Stat. 605, 606 (1798). The sums collected were to be used "to provide for the temporary relief and maintenance of sick or disabled seamen . . . ." *Id.* § 3. Any surplus was to be sent to the Treasury Department for the future construction of permanent marine hospitals. *Id.* § 4. Accordingly, the Marine Hospital Act does not provide Plaintiff a cause of action and is inapplicable to his claims. Plaintiff's claim for "[v]iolation of Chapter LXXVII An act for the relief of sick and disabled seam[e]n by the 5th Congress" will be **DISMISSED WITH PREJUDICE**.

### n.  *Hippocratic Oath*

Plaintiff alleges a claim for "[v]iolation of Hippocratic Oath required by new physicians to uphold specific ethical standards."  (Doc. 22, at 3.)  "Apart from professional negligence claims, there are no federal or state civil causes of action for violations of professional ethics."  *Carter v. FCI Fort Dix Med. Dir. & Warden*, No. 16-2441 (JBS-AMD), 2017 WL 1098819, at *3 (D.N.J. Mar. 23, 2017) (citing *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 282 (3d Cir. 2001)); *see also Jennings v. Friedman*, No. 88-6046, 1989 WL 54766, at *2 (6th Cir. May 25, 1989) (affirming a district court's grant of summary judgment on a medical-malpractice claim even though the defendant's actions were "possibly unethical and a violation of the Hippocratic oath").  Accordingly, Plaintiff's claim for violation of the Hippocratic Oath will be **DISMISSED WITH PREJUDICE**.

## V.  CLAIMS AGAINST THE OFFICER DEFENDANTS

The Officer Defendants argue that Plaintiff's claims against them should be dismissed for failure to state a claim upon which relief may be granted.[11]  (Doc. 100.)  Additionally, the Officer Defendants assert that they are entitled to qualified immunity.  (*Id.*)  To the extent Plaintiff asserts a claim against the Officer Defendants for violations of the Declaration of Independence, the Eighth Amendment, the Ninth Amendment, the Fourteenth Amendment, 42 U.S.C. § 1395, the Proxmire Act, the ICESCR, the ADA, and the Marine Hospital Act, those claims will be **DISMISSED WITH PREJUDICE** for the reasons already discussed.[12]  *See*

---

[11] The standard for dismissal under Rule 12(b)(6) is discussed *supra* in Part IV(a).

[12] These claims will also be **DISMISSED WITH PREJUDICE** against Defendant Suzanne Allen for the reasons discussed herein.  The Court has already dismissed Plaintiff's state-law claims against her (*see* Doc. 133), leaving no operable claims against Allen.

*supra* Part IV.  The claims remaining against the Officer Defendants are for violations of the First and Fifth Amendments.[13]

A claim for constitutional violations against federal officials in their individual capacities may be asserted under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *Marcilis v. Twp. of Redford*, 693 F.3d 589, 595–96 (6th Cir. 2012).  To state a claim under *Bivens*, a complaint must "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right" because each federal official is liable for his own misconduct.  *Id.* at 596–97 (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original)).  Where a *Bivens* complaint only "refers to all defendants generally and categorically," the plaintiff fails to state a claim upon which relief may be granted.  *Id.*  Even a plaintiff proceeding *pro se* must comply with this pleading requirement.  *See Leeds*, 174 F. App'x at 255 (affirming district court's dismissal for failure to state a claim where the *pro se* plaintiff "failed to make more than conclusory allegations" of a constitutional violation).

Here, Plaintiff's constitutional claims against the Officer Defendants arise from two incidents:  1) Shelton's alleged interrogation of Plaintiff at the Disruptive Behavior Clinic on June 6, 2017, and 2) Plaintiff's alleged detention at the Mountain Home VAMC police station on July 3, 2017.[14]  (*See generally* Doc. 22.)  With regard to the incident on July 3, 2017, Plaintiff makes only bare assertions of legal conclusions as to the Officer Defendants' alleged misconduct.  For example, Plaintiff alleges the Officer Defendants "falsely imprisoned [him] . . .

---

[13] The United States has been substituted in place of the Officer Defendants for the state-law tort claims alleged against them.  These claims will be discussed *infra* in Part VI.

[14] Plaintiff also makes some factual allegations against a "Sgt. Haney" in connection with the incident on November 29, 2016 (*see, e.g.*, Doc. 22, at 7), but does not list him as a defendant.  He alleges a claim for assault and battery in connection with this incident, which will be analyzed in connection with the claims against the United States under the FTCA.  *See infra* Part VI.

by detaining him for 30 minutes with no cause" and that he was "kidnapped (forced to enter police station against my will without being read my rights or being charged with a crime) by threat of physical violence by three armed officers." (Doc. 22, at 4, 18.) Plaintiff fails to allege any specific facts as to how he was "forced," what the "threat of physical violence" entailed, or how the Officer Defendants "detained" him for thirty minutes. Plaintiff does not allege specific actions taken by any of the Officer Defendants on July 3, 2017. With regard to Defendants Jamerson and King, other than naming them in the case caption, Plaintiff makes no other allegations specific to them in his amended complaint. Because Plaintiff does not plead sufficient facts to state a plausible claim for relief or allege with particularity facts that demonstrate what each Officer Defendant did to violate his constitutional rights, he fails to state a claim upon which relief may be granted in connection with the incident on July 3, 2017.

Even if the Court construed Plaintiff's allegations about the incident on July 3, 2017, as a claim for violation of the Fourth Amendment's prohibition against unreasonable seizures, his claim would still fail. First, the lack of allegations in the amended complaint regarding what Plaintiff characterizes as a "detention" makes it impossible to determine whether Plaintiff was "seized" within the meaning of the Fourth Amendment. *See I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984) (noting that a seizure under the Fourth Amendment occurs where, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"); *see also Andrews v. Fuoss*, 417 F.3d 813, 816 (8th Cir. 2005) (noting that a plaintiff must demonstrate he was seized within the meaning of the Fourth Amendment to establish an unreasonable-seizure claim). And, even taking Plaintiff's legal conclusions at face value, "[t]he ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973). Courts have recognized that "[n]o Fourth Amendment

violation results when an immediate caretaking interest justifiably compels an officer's intrusions." *See, e.g.*, *United States v. Brown*, 447 F. App'x 706, 709–10 (6th Cir. 2012) (finding no Fourth Amendment violation where police stopped and questioned an individual who was the last person to have seen a missing minor). Where an officer's purpose is "divorced" from the investigation of a criminal violation, it supports a finding of a caretaking interest rather than a Fourth Amendment violation. *Id.* An officer's actions "must be examined in light of what actions were objectively reasonable for a law enforcement officer in the role of a community caretaker to take under the circumstances." *Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1075–76 (S.D. Ohio 2013) (finding a plaintiff failed to state a constitutional claim where the officer's actions were objectively reasonable to prevent further harm).

Here, by Plaintiff's own allegations, his record was "flagged as a danger to [himself], others or medical staff." (Doc. 22, at 14–15.) The incident on July 3, 2017, occurred approximately one month after Plaintiff's comments to Dr. Edwards, the alleged reason for the flag. (*Id.* at 14.) Given the public nature of the event on July 3, 2017, and the fact that a United States Congressman was scheduled to appear, it was objectively reasonable to detain Plaintiff for a brief period of time to prevent harm to himself or to anyone else. The Officer Defendants were not investigating a possible criminal violation by Plaintiff, but attempting to keep the peace. Accordingly, even viewing the facts in the light most favorable to Plaintiff, the Officer Defendants' alleged intrusions were justifiably compelled by an immediate caretaking interest.

As for the Disruptive Behavior Clinic "interrogation" on June 6, 2017, Plaintiff alleges that the "[u]se of United States medical facility for the purpose of interrogation and intimidation under color of Law and/or authority" violated his Fifth Amendment due-process rights. (Doc. 22, at 2.) "The United States Supreme Court has recognized that outrageous misconduct by law

enforcement officials can rise to the level of a due process violation." *Dowthitt v. Johnson*, 180

F. Supp. 2d 832, 867 (S.D. Tex. 2000) (citing *Rochin v. California*, 342 U.S. 165, 169 (1952)).

To violate due process, "the misbehavior must . . . 'shock[ ] the sensibilities of civilized society .

. . .'" *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 433–34 (1986)). Courts are "extremely

hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause."

*Id.* (quoting *United States v. Voigt*, 89 F.3d 1050, 1065 (3d Cir. 1996)).

In this case, Plaintiff alleges Shelton "interrogated" him with his firearm and handcuffs

plainly visible "[i]n an obvious attempt at intimidation." (Doc. 22, at 15.) This conduct, even if

true, falls short of misconduct that "shocks the sensibilities of civilized society." *See id.* at 868

(determining that a police interrogation technique that uses personal space to "put[ ] the

interviewee in a position of being stressed" did not establish a due-process violation).

Accordingly, Plaintiff fails to state a claim under the Fifth Amendment based on Shelton's

behavior during the Disruptive Behavior Clinic.

The Officer Defendants are also entitled to qualified immunity. Claims under *Bivens* are

subject to the qualified-immunity defense. *Robertson v. Lucas*, 753 F.3d 606, 619 (6th Cir.

2014). The doctrine of qualified immunity "shields governmental officials from monetary

damages as long as their actions did not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Sumpter v. Wayne Cty.*, 868 F.3d 473,

480 (6th Cir. 2017) (internal quotation marks omitted). In deciding whether a defendant is

entitled to qualified immunity, the Court employs a two-part test, which may be conducted in

either order. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). First, the Court

determines whether the facts, viewed in the light most favorable to the plaintiff, show that the

official violated a constitutional right. *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir.

2012). Second, if a constitutional right was violated, the Court determines whether the right was clearly established at the time the violation occurred. *Id.* The plaintiff bears the burden of "satisfy[ing] both inquiries in order to defeat the assertion of qualified immunity." *Sumpter*, 868 F.3d at 480.

Here, given that Plaintiff fails to state a claim for a constitutional violation, the facts viewed in the light most favorable to Plaintiff do not show that the Officer Defendants violated a constitutional right. And, even taking Plaintiff's legal conclusions of his "illegal detention" on July 3, 2017, at face value, Plaintiff fails to demonstrate that the right alleged to have been violated was clearly established at the time of the incident. When determining whether a right was clearly established, a court should not define the right alleged to have been violated too broadly. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Instead, courts should focus on the defendant's "particular action" and ask whether "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he [was] doing violates that right." *Id.*

Plaintiff alleges that, on July 3, 2017, he was "kidnapped (forced to enter police station against [his] will without being read my rights or being charged with a crime) by threat of physical violence by three armed officers," then detained for thirty minutes. (Doc. 22, at 4.) But, as noted, Plaintiff also alleges that his record was "flagged as a danger to [himself], others or medical staff." (*Id.* at 14.) And Plaintiff does not include any factual allegations about what happened during those thirty minutes he was detained. Accordingly, the relevant question is whether a reasonable officer in the Officer Defendants' position would understand that taking an individual who had been flagged as dangerous to the police station for questioning during an event where a United States Congressman was scheduled to speak would violate his

constitutional rights. The answer is, unequivocally, no. The Officer Defendants are entitled to qualified immunity, and Plaintiff's constitutional claims against them will be **DISMISSED WITH PREJUDICE**.[15]

## VI. CLAIMS AGAINST THE UNITED STATES

The United States argues that Plaintiff's state-law claims under the FTCA for medical malpractice, negligence, libel, slander, assault, battery, and false imprisonment should be dismissed for failure to state a claim upon which relief may be granted or for lack of subject-matter jurisdiction.

### a. *Standard of Law*

The standard for dismissal under Federal Rule 12(b)(6) is discussed *supra* in Part IV(a). Federal Rule of Civil Procedure 12(b)(1) provides for dismissal based on lack of subject-matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Because the United States challenges the sufficiency of Plaintiff's complaint and the Court will not be required to make any factual findings in deciding whether it has jurisdiction, the Court will consider the United States' arguments as a facial attack and take Plaintiff's allegations as true for the purposes of ruling on the motions to dismiss.

---

[15] Plaintiff has amended his complaint once as a matter of course without correcting these pleading deficiencies. (*See* Docs. 1, 22.) Additionally, Plaintiff neither filed a response to the Officer Defendants' motion to dismiss nor filed a motion seeking to amend his complaint.

### b. *Medical Malpractice and Negligence*

Plaintiff alleges a claim against the United States for medical malpractice and negligence based on the Medical Provider Defendants' "[d]enial of life saving pain medication," "[i]nability [to] read medical chart or reports from X-rays, CAT scans or MRIs," "[r]eckless endangerment of life" by discharging Plaintiff from the emergency room on November 29, 2016, with high blood pressure and untreated pain, entering false statements and diagnoses in his records, and "[p]racticing medicine without a license." (Doc. 22, at 3, 16–17.)

The Tennessee Health Care Liability Act ("THCLA") imposes certain procedural requirements on plaintiffs who file health-care liability claims.[16] *See* Tenn. Code Ann. § 29-26-101 *et seq.* The Sixth Circuit has explicitly held that the requirements under the THCLA are "substantive Tennessee law applicable to FTCA cases which arise in that state." *Burns v. United States*, 542 F. App'x 461, 463 (6th Cir. 2013).

The THCLA requirements apply to Plaintiff only if he asserts a claim for health-care liability as defined by the THCLA. The THCLA defines "health care liability action" as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). "[W]hether a health care liability action is implicated is entirely dependent on whether the factual allegations meet the definition outlined in the statute." *Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 885 n.6 (Tenn. 2016).

Here, Plaintiff's claims for medical malpractice and negligence against the United States are health-care liability claims. Plaintiff's factual allegations against the Medical Provider

---

[16] The THCLA and its requirements are discussed in more detail in the Court's memorandum opinion on Allen's motion to dismiss. (*See* Doc. 133, at 6–14.)

Defendants stem primarily from their refusal to prescribe him opioid medications, which Plaintiff alleges are medically necessary. (*See generally* Doc. 22.) His allegations also stem from certain Medical Provider Defendants diagnosing him as having opioid use disorder, which Plaintiff characterizes as "misrepresentations . . . [which] caused him to be denied treatment" by other providers. (*Id.* at 17.) These allegations relate to the provision of, or failure to provide, health-care services. Accordingly, Plaintiff's medical malpractice and negligence claims against the Medical Provider Defendants are subject to the THCLA.

The THCLA requires a plaintiff asserting a health-care liability claim to file a certificate of good faith with the complaint where expert testimony is required. Tenn. Code. Ann. § 29-26-122. Failure to comply with the good-faith requirement will make the action subject to dismissal with prejudice. Tenn. Code Ann. § 29-26-122(c). Once a defendant specifies the THCLA-requirement deficiencies in a plaintiff's complaint, the burden shifts to the plaintiff to show: 1) that he complied with the THCLA's requirements, 2) extraordinary cause for failing to do so, or 3) that his failure to comply "was due to the failure of the provider to timely provide copies of the [plaintiff's] records requested . . . ." Tenn. Code Ann. § 29-26-122(a); *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012).

"In health care liability actions . . . expert proof is required to establish the recognized standard of acceptable professional practice in the profession, unless the claim falls within the 'common knowledge' exception . . . ." *Ellithorpe v. Weismark*, 479 S.W.3d 818, 829 (Tenn. 2015) (citing Tenn. Code Ann. § 29-26-115). This exception applies "where the alleged acts of negligence are so obvious that they come within the common knowledge of layman." *Osunde*, 505 S.W.3d at 888 (internal quotation marks omitted). Cases where the common-knowledge exception has been applied "typically involve unusual injuries such as a sponge or needle being

left in the patient's abdomen following surgery or where the patient's eye is cut during the performance of an appendectomy." *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 92 (Tenn. 1999) (citations omitted). "Jurors in those cases are permitted to infer negligence based upon a common-sense understanding that such injuries do not ordinarily occur unless the attending physician or health-care provider was somehow negligent." *Id.*

Even viewing Plaintiff's allegations in the light most favorable to him, his claims against the Medical Provider Defendants do not fall within the common-knowledge exception. Plaintiff alleges that the Medical Provider Defendants refused to provide him pain medication, despite his deteriorating condition. But proving that pain medication was medically necessary would require expert testimony because proper pain treatment is not within the common knowledge of a layperson. *See Thomas v. O'Toole*, No. M2001-00305, 2001 WL 950200, at *2 (Tenn. Ct. App. Aug. 22, 2001) ("Proper treatment of alleged pain resulting from kidney stones and appropriate drug therapy for stress and anxiety are obviously not matters within the knowledge of a layman and expert testimony is required."). Consequently, Plaintiff was required under the THCLA to file a certificate of good faith with his complaint.

Plaintiff has not shown that he complied with the certificate-of-good-faith requirement, that he had extraordinary cause for failing to do so,[17] or that his failure was due to any provider's failure to timely provide copies of requested records. Accordingly, Plaintiff's claims for medical malpractice and negligence against the United States—substituted for the Medical Provider Defendants—will be **DISMISSED WITH PREJUDICE**.

---

[17] Tennessee courts have held that a plaintiff's *pro se* status does not excuse non-compliance with the THCLA. *See, e.g.*, *Lacy v. Mitchell*, 541 S.W.3d 55, 59 (Tenn. 2016) ("While the court should give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs, it must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.").

### c. *Libel and Slander*

Plaintiff alleges libel and slander claims against the United States for the Medical

Provider Defendants' conduct in entering certain misrepresentations, such as opioid dependence,

into his medical records. (Doc. 22, at 3.)

"The doctrine of sovereign immunity shields the United States from lawsuits." *Jackson*

*v. United States*, 751 F.3d 712, 716 (6th Cir. 2014) (citing *Dep't of the Army v. Blue Fox, Inc.*,

525 U.S. 255, 260 (1999)). Where sovereign immunity applies, a district court lacks subject-

matter jurisdiction and should dismiss the suit "unless a claimant can point to an express waiver

of sovereign immunity." *Id.* The FTCA creates a waiver of sovereign immunity under which the

United States may be held liable for certain torts committed by federal employees. 28 U.S.C. §

1346(b); U.S.C. § 2674. The FTCA, however, explicitly excludes both libel and slander from its

waiver of sovereign immunity. 28 U.S.C. § 2680(h) ("The provisions of [the FTCA] shall not

apply to . . . [a]ny claim arising out of . . . libel [or] slander . . . ."); *Rector v. United States*, 243

F. App'x 976, 979 (6th Cir. 2007) (affirming a district court's dismissal of claims against federal

employees that "ar[ose] out of libel, slander, and misrepresentation, which are specifically

exempted from the [FTCA's] general waiver of immunity").

Accordingly, the Court lacks subject-matter jurisdiction over Plaintiff's libel and slander

claims, and they will be **DISMISSED WITH PREJUDICE**.

### d. *Assault, Battery, and False Imprisonment*

Plaintiff alleges assault, battery, and false imprisonment against the United States, based

on conduct by the Officer Defendants. (Doc. 22, at 17–18.) Plaintiff's assault and battery claims

are based on conduct by "Sgt. Haney," who is not a defendant to this action, on November 29,

2016. (*Id.* at 17.) Plaintiff alleges that, given that Haney was "equipped with his sidearm and in

uniform" while telling Plaintiff that he would throw him in his car and take him to the magistrate judge in Greeneville, "Plaintiff reasonably believed that Haney would indeed grab him . . . ." (*Id.*) Additionally, Plaintiff alleges that "[t]he Mountain Home VA[MC] officers battered Plaintiff by grabbing his wheelchair for the purposes of taking him into unlawful custody."[18] (*Id.*) Finally, Plaintiff alleges that his detention by the Officer Defendants on July 3, 2017, constituted false imprisonment. (*Id.* at 18.)

As noted, the FTCA provides the exclusive remedy for a plaintiff asserting tort claims against the United States. 28 U.S.C. § 2679(b)(1). Though claims arising out of assault, battery, and false imprisonment are typically excluded from the FTCA's waiver of sovereign immunity, that exception does not apply to "acts or omissions of investigative or law enforcement officers of the United States Government . . . ." 28 U.S.C. § 2680(h). But the Court's jurisdiction to hear FTCA claims "is limited to the conditions imposed by Congress under which suits are to be permitted." *Slomczewski v. United States*, No. 3:12-CV-188, 2013 WL 322115, at *2 (E.D. Tenn. Jan. 28, 2013) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Ashbrook v. Block*, 917 F.2d 918, 922 (6th Cir. 1990)). The FTCA requires that an administrative claim be presented to the proper federal agency before a plaintiff may file suit:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). The administrative-claim requirement is a "jurisdictional prerequisite to obtaining judicial review." *Joelson v. United States*, 86 U.S. 1413, 1422 (6th Cir. 1996).

---

[18] It is unclear from Plaintiff's amended complaint when this alleged battery took place.

Consequently, when a plaintiff does not comply with the administrative-claim requirement or fails to allege that he complied, his FTCA claims should be dismissed. *Id.*

According to Plaintiff, he has "communicated repeatedly with Mountain Home VAMC, including going up the chain of command to the Secretary of Veterans Affairs" in connection with the Medical Provider Defendants' "misdiagnosis" of opioid use disorder. (Doc. 22, at 12–13.) The United States concedes that Plaintiff initiated an administrative claim with the VA by filing a Standard Form 95 (the "Claim") and attached a copy of the Claim to its motion to dismiss. (Doc. 101-1.) The Claim, filed in early May 2017, "assert[s] that Dr. John P. Hendrick . . . is guilty of slander, defamation of character, medical malpractice, [and] flagrant[ ] misdiagnose[s]." (*Id.*) The Claim mentions two other physicians that are not defendants herein. The Claim does not present any claims for assault, battery, or false imprisonment, or even mention any of the Officer Defendants or their conduct. Plaintiff fails to allege or argue that he filed an administrative claim in connection with alleged misconduct by the Officer Defendants. (*See generally* Doc. 22.) Accordingly, Plaintiff has not satisfied the FTCA's jurisdictional prerequisite, and his claims for assault, battery, and false imprisonment will be **DISMISSED WITHOUT PREJUDICE**.

## VII. CONCLUSION

For the foregoing reasons, the motion for substitution of parties (Doc. 95) is **GRANTED**, the motion to dismiss filed by the United States and the Medical Provider Defendants (Doc. 97) is **GRANTED**, the motion to dismiss filed by the Officer Defendants (Doc. 99) is **GRANTED**, and the motion to dismiss certain intentional-tort claims filed by the United States (Doc. 101) is **GRANTED**. Plaintiff's claims for assault, battery, and false imprisonment are **DISMISSED WITHOUT PREJUDICE**. All of Plaintiff's other claims are **DISMISSED WITH**

**PREJUDICE**.  Plaintiff's motion for supporting evidence or for dismissal of Defendants' motions to dismiss (Doc. 108) and the motion to amend the scheduling order (Doc. 134) are **DENIED AS MOOT**.

       **AN APPROPRIATE JUDGMENT WILL ENTER.**

                                 **/s/ Travis R. McDonough**
                                 **TRAVIS R. MCDONOUGH**
                                 **UNITED STATES DISTRICT JUDGE**